STIRLITH BROTHERS COMPANY, a corporation of the State of Delaware,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, and JOHN A. DILLMAN, the Collector of Taxes for the Southern District of the City of Wilmington.

*New Castle, Feb. 5, 1937.*

*Reuben Satterthwaite, Jr.,* of the firm of Satterthwaite & Foulk, and *William S. Satterthwaite,* both of Wilmington, for complainant.

*James R. Morford,* City Solicitor of Wilmington, for defendants.

THE CHANCELLOR: This case involves the question of whether municipal taxes on two lots abutting on the Christiana River are legally assessable for the years 1919 to 1935, inclusive. The complainant claims the lots are exempt from assessment by reason of *Sections* 3 and 4 of *Chapter* 106, *Volume* 21 *Laws of Delaware.*

First as to lot No. 2. It is conceded by the complainant that this lot is not and was not during the years referred to, exempt from taxation under *Section* 3 of the *Act.* It is contended, however that it is and was exempt under *Section* 4 of the *Act,* because, it is claimed, the lot was meadow land and was filled in and raised above high-water so as to become high and fast land, at the expense of the owner. If so, the lot is exempt under the statute for the period of ten years from the time it became high and fast. Taxes are claimed for seventeen years. The last filling was in 1931— "five years ago" is the testimony.

That the land on this lot is now high and fast within the meaning of *Section* 4 of the *Act,* appears to be the fact. When did it become so? That question is necessary to be answered in order that the commencement of the ten years exemption period may be ascertained. The complainant contends that while some of the land was high and fast before 1931, yet some of it, the part adjoining the river bank, was not so until that year when eleven hundred yards of dirt were used to fill it in; and that the blending in one assessment of tax-exempt and non-tax exempt lands renders the whole assessment void. Under this contention

the assessment of lot No. 2 would be illegal, so far as *Section* 4 is concerned, prior to 1931 because part of the lot would have then been assessable and part would not; and since 1931 the whole would be exempt for ten years because it all then became high and fast by filling.

The burden is on the land owner to prove every fact esential to show the exempt status of his land. The complainant must, therefore, show affirmatively when the land became high and fast before it can claim the benefit of the exemption created by *Section* 4.

The last fill in 1931 was placed on the river end of the lot. The testimony justifies the view that the fill of that date (eleven hundred yards) was spread over an area about fifty feet by one hundred and seventy-eight and two-tenths feet. A calculation reveals that such a fill would have raised the level of the land about one foot and three-tenths inches. Subtracting that distance of rise from the present ground elevation shows the elevation prior to the fill to have been from eleven and one-half to over twelve feet above the city datum plane. This was well above the extreme high tide shown for a period of ten years commencing in 1925. The lot then, on its river end appears to have been high and fast prior to 1931. This is so with respect to all of it, except a relatively small depression lying back behind the river end of the fill. That depression, however, has an elevation ranging from nine and ninety-seven hundredths feet to ten and seventy-two hundredths feet above the city datum plane, elevations which are well above the average high tides in a ten year period and exceeded only five or six times by extraordinarily high tides in a ten year period. But this area of depression is surrounded by high and fast land, and was so surrounded so far as the testimony shows prior to 1931. How long before, is not shown. In the absence of a showing, the court must not presume it was for so short a time as to save the complainant from tax liability. The statute does not contemplate that land lying below

tide level but which is in the midst of high and fast land, and therefore not subject to overflow, shall be exempt.

As to lot No. 1. The exemption in favor of this lot is claimed under *Section* 3 of the *Act.* That section provides that where marsh and meadow lands lying within the city of Wilmington are protected from overflow by the tides by banks at the expense of the owners thereof, whereon no houses or buildings are erected, they shall be exempt from municipal taxes.

There is a bank constructed along the river end of this lot. The blueprint shows three of its elevations, *viz.,* nine and one-tenths feet, nine and four-tenths feet and ten and eight-tenths feet above the city datum plane. The natural slope of the lot appears to be from the river. Adjoining the bank the elevations of the lot are from eight and seventy-three hundredths feet to eight and ninety hundredths feet and proceeding from the river, the elevations drop to below seven feet.

The average high tide rises to six and eighty-eight hundredths feet above the city datum plane. From a record of the first five high tides in each month of the year for a period of ten years, a computation shows that in one year, assuming the figures to be typical, there would be over forty-six high tides in the year rising in height from eight and one-hundredths feet to nine feet and over nine high tides rising in height from nine and one-hundredth feet to ten feet. These heights are based on the city datum plane, and are ascertained from records at the Marine Terminal. They are to be reduced two or three inches because of the distance of the lot up stream, from the Marine Terminal.

From the foregoing it would appear that the banks along the river protect the lot from overflow by fairly frequent high tides during the year.

The lot is partly filled in. The fill runs back from the end bordering on the State highway about four or five hundred feet towards the river. The elevations of the fill are

such as to indicate that if the bank constructed along the river were not there, the tidal overflows could not spread over the fill. Therefore, the highway end of the lot appears to be high and fast for a depth from the highway of about one-third of the lot's length. Assuming that the filled portion was filled over ten years ago and is not therefore exempt, yet the remaining two-thirds appears to be exempt because of the protecting bank, which the evidence shows was erected by either the present owner or its predecessor, and is maintained, when maintenance is necessary, by the present owner.

The case with respect to lot No. 1 appears, then, to be one where a portion of a lot, if it be assumed for the city that it is taxable, has been joined in a single assessment with a portion that is exempt. In such case the whole assessment is invalid. *Delaware Registration Trust Co. v. Delaware Forge & Steel Co.*, 15 *Del. Ch.* 381, 138 *A.* 620.

The injunction as prayed with respect to lot No. 1 will issue, and with respect to lot No. 2 will be denied.

Order accordingly.